That's the case this morning. I apologize if I mispronounced the name. Is it Deppe? Yes, sir. Deppe v. Village of Swansea Planning & Zoning Board. Case number 5-25-0010. Arguing for the appellant is Debrian Flantham. Yes, I'm here. I believe the bill is here. I'm the appellant. I'm sorry. There's a cross appeal in this case. I'm sorry. So John Kurowski and Brian Flantham? Right. All right. Because there's a cross appeal, I'm going to give you 15 minutes for your argument and then 5 minutes each for rebuttal. So if I get confused on the timing and there's a lot of time, don't hesitate to call that to my attention. So Mr. Kurowski, you go first now. May it please the court, counsel. Your Honor, it's good morning. I'm John Kurowski. I'm representing the Village of Swansea, Illinois, which is in St. Clair County Planning & Zoning Board on an administrative review appeal. In the summer of 2003, Swansea closed the self-storage business of the plaintiffs because the zoning of the property didn't permit that business. The plaintiffs appealed to the Swansea Planning & Zoning Board, which was the appropriate avenue of appeal, which upheld that decision in a 6-1 vote after a hearing, which is part of the record. On administrative review in St. Clair County, the trial court reversed the determination in part and affirmed it in part. The Swansea Zoning Board of Appeals appeals here and requests reversal. Your Honor, this case presents the plaintiffs with two very significant barriers to relief, which they did not overcome, requiring reversal. The first is the standard of review in administrative review actions. The standard of review to be employed depends on what is disputed. The facts, the law, or both, which would be a mixed question of law and facts. Where the facts are disputed as here, as we contend, which we think is clear in the record, or even where the historical facts are established and the issue is solely whether the facts satisfy the legal standard, which in this case involves the claim of estoppel, the clearly erroneous standard applies. We think the record clearly supports that. The plaintiffs suggest the standard of review is de novo by boldly trying to suggest that the facts surrounding estoppel are undisputed. First, I believe the types of issues most commonly subject to de novo review are pure legal issues, such as jurisdiction, res judicata, collateral estoppel, none of which are present here. What we contend plaintiffs are arguing here in their brief is that the estoppel facts are undisputed by choosing which facts to include or not to include. For example, note in his opening testimony of Mr. Deppie here, which is, the direct exam is about eight pages, he bleeds with the fact that he thought he could operate this business at the outset because he relied on statements made by a prior zoning administrator of the village of Swansea named Terry Harp in 2006. But later the record demonstrated when he was called on it by the village of Swansea that what in fact was the understanding of what occurred that these buildings would be built as supportive of residential buildings, which is permitted under conservation. So the facts on that particular issue are disputed and the Zoning Board resolved those facts. But the position of the plaintiffs here is that, well, we're not relying on those facts. We want you to ignore those facts. But as we would say, the facts are the facts, and that's part of the record which I think determines the standard of review. The clearly erroneous standard application is important because it provides a measure of deference to the agency's experience and expertise. The deference means, as I'm sure your honors know, in an administrative agency's findings and conclusions on questions of facts should be held to be prima facie true and correct. It's the agency's duty to accord weight to evidence, resolve conflicts in the evidence, and determine credibility of witnesses. The agency's decision should be affirmed if the record contains evidence supporting it. The court may not overturn it merely because it thinks it's unwise. Administrative agencies are given wide latitude in determining what actions are necessary. Now, the plaintiffs also attempt to argue on this issue of the standard that the agency's expertise and experience do not apply here since the case does not involve the enforcement of a statute. Nothing supports that in the case law, or limits the review of an agency such as a zoning board, because there are certain legal issues such as estoppel involved. The zoning board has the authority to consider all issues. Indeed, the board has the benefit of counsel, including an executive session, to assist with its deliberations in this case. The second barrier for plaintiffs to overcome, which we continually do not, is the compelling requirements of proving estoppel. It's a well-settled principle in equity that courts do not favor equitable estoppel to a public body. Estoppel can only be applied in extraordinary or compelling circumstances. Specifically, it can only be applied where an agreed party can show one municipality affirmatively acted, the affirmative act can do substantial reliance, and the agreed party substantially changes position as a result of the justifiable reliance. Most importantly, whether it's a zoning board or a court, the estoppel must be proved by clear and convincing evidence, as it is an equitable remedy. Now, in the context of attempting to prove this equitable estoppel, we should be mindful that those who deal with government bodies take the risk of having accurately ascertained that he who purports to act for the body stays within the bounds of his authority. So looking at the elements of proof, first we see that plaintiffs have failed to prove that Swansea affirmatively acted. Case law, I think, is clear that an affirmative act must be an act of the public body itself, such as a legislative enactment, rather than an unauthorized act of a ministerial officer. Plaintiffs essentially admit in their brief that they are relying on affirmative acts, or not relying on affirmative acts, saying, we rely on undisputed facts, written communications, and the knowledge of the village, rather than on oral statements made to plaintiffs to prove an affirmative act supporting estoppel. Assertions of city officials, which they admit, that knowledge of the village, as they contend, and oral statements are not affirmative acts of a public body itself that can support an estoppel. In his very limited testimony in this case, the plaintiff tended to rely heavily on statements of Mr. Harp, which I mentioned earlier, which he says he now doesn't rely on. As affirmative acts, plaintiffs also assert the village permitted construction under multiple permits. It's building permits. This is important because these were all based on applications for building permits. They had nothing to do with zoning. In not one of them is there a reference to permitting a self-storage business on plaintiff's properties. In not one of them is there even a reference that plaintiffs are operating or will operate a self-storage business. It's not the purpose of a building permit. In not one of them is there an application for a zoning variation or amendment in the face of plaintiff's admission that he knew the zoning on his property did not permit the self-storage. Most importantly, these building permit applications had a builder's statement in bold letters where the applicant titled the builder's statement, Understanding, Acceptance, and Agreement that said, among other things, that the applicant understands and accepts and agrees that any permit issued for any building does not create the privilege to erect a structure on a property for a purpose in a manner prohibited by the adopted code. I understand, accept, and agree that responsibility for assuring plans comply with codes. The permit is granted on express condition that construction will conform to the ordinances and codes. This plan, as did all applicants for building permits in Swansea, accepted the responsibility of obtaining the proper zoning. Plaintiffs responded to that by saying the descriptions in the applications did not always align with what was ultimately constructed, which I think is frankly unpersuasive. The additional position of the plaintiff is that he relied on what the zoning administrators told him because the zoning ordinance says that the administrators are to assist and provide information. But the law is well settled that the plaintiffs and applicants in the position of the plaintiffs had a duty to make themselves aware of the zoning and legal requirements and are presumed to know the extent of a municipal officer's power. As noted in the leading case of city services oil versus the village of Des Plaines, making no attempt to learn of applicable ordinance is fatal to estoppel. Finally, the plaintiffs relied heavily on an argument that estoppel applied because the village did not shut down the plaintiff's business. Indeed, the trial court relied in part on that concept. But this argument should fail and the case should be reversed because case law is clear that mere non-action or inaction of governmental officers is not sufficient to invoke estoppel. Among the cases cited in the brief includes County of DuPage versus K-5 construction, but also the 1966 Supreme Court decision of Hickey versus Illinois Central Railroad said, among other things, we have always adhered to the rule that mere non-action of government officers is not sufficient to work an estoppel. We think this is important here because, as I said, the trial court made specific mention of that. The remaining two elements needed to sustain equitable estoppel are that the actions of the defendant induced reliance and that plaintiffs substantially changed their position as a result of this reliance. To sustain these elements of proof, plaintiffs assert they were permitted to operate the storey's business for 16 years, investing over $1 million for that purpose. A similar argument is made in support of latches. This is simply untrue as we set forth in detail on our brief and is contradicted by the record. Plaintiffs attempted, in fact, in the record, to operate under the radar and if not engaged in acts of deception towards someone, he decides to sidestep their lack of compliance. For example, the permits show that at the outset it was not an operation of a storage business. Plaintiffs admit he always knew that the zoning did not permit the business and his applications talked about garages, new buildings, and their discussion about storages as an accessory building, which I mentioned earlier. In fact, there was a letter from a former administrator named John Openlander to this effect and Mr. Depke's testimony was he didn't recall that. He told the village at various times between 2006 and 2020 that the buildings were for a nursery, therefore, were for a growing lawn care business and he was in the lawn care business since 1982. He registered a landscaping business and he built a garage in Polborn while registered it as a lawn care business. So the only evidence that he overtly was, other than when he was called on in 2010, he was operating the business, is that he did establish a website in 2021, which began to lead to the enforcement process leading to the zoning board appeal and then this litigation. The plaintiff also relies on appraisals done on two loans in this property, which we don't think is appropriate. First of all, the reliance has to be on a government official, not on an appraiser. Even if there was, the plaintiff has to rely on it. Mr. Depke testified on cross-examination that he was not even aware of the appraisals and first saw them at the hearing. So with respect to the appraisals, first of all, there was a dispute as to what the appraisals, who they talked to and whether or not the evidence was actually obtained of a non-conforming use. But that is not an official act upon which they can rely. There was no loan application supplied and the loan was used for purpose. Interesting in the testimony, he said the loan was used for purpose of 1906 Llewellyn, a different property. So the agency findings of fact are prima facie true, it resolves evidentiary issues and there's more than sufficient facts in the record to support the decision of the zoning board here. On the issue of latches, we contend first that it's waived. The only mention of it is in one word sentence in the appeal letter that was sent and we think that like any point on appeal, the error cannot be assessed without the prior fact having been made aware of the arguments and considered them and that simply did not happen here. Can you speak to the December 16, 2022 email the village sent to Debbie? It seemed to imply if you're willing to supply certain things, it's not too late, we can still issue these non-conforming certificates. Was that from the village administrator? I believe so. Mr. Schlesser? Yes. Well, I think at the time that the enforcement occurred, Mr. Schlesser, and he testified to this in the hearing, he corrected himself, was under the impression that they could somehow resolve it, that they could get compliance and they could do things to alleviate the concerns of the citizens. I think he testified in effect at the hearing that he wasn't fully aware of the zoning issue, if you will, and immediately after that, the enforcement process went ahead. So I don't think, notwithstanding that, I don't think that fact assertion alone is sufficient to raise an estoppel issue. And the zoning process has a conciliatory process. There has to be a meeting. There were meetings. All of these things were followed. The thing that couldn't be resolved because of the zoning was very specific. Time to open this. Justice McCain, any other questions? Justice Packett? No, sir. Thank you. Thank you. Good morning. May it please the Court. I'm Brian Flynn, and I am here for the deputies who are the appellees and the cross appellant. First, I want to address that there was a motion to supplement by the appellant, which we objected to. It is laid out in our written objection. Proposed orders are not part of the record, and we believe that motion should be denied. To address the village's appeal, the standard review here must be de novo. This is an appeal from the administrative decision, and it contains no factual findings. There cannot be a factual dispute when no fact findings have been made. The zoning board's one sentence concludes their finding on a legal issue, which lacked any explicit factual support, requires no deference. So do you think we should remand it back to make those findings? Do you think there's enough in the record to decide this case? I think there's enough in the record to decide the case, Your Honor. We argue for equitable estoppel, and that applies to our case. We have met the three elements as recognized by the circuit court. One, the government entity acted affirmatively. The village issued multiple permits for buildings on both 1958 and 2012 Llewellyn and conducted inspections associated with each permit. Surely the village inspector saw what was going on in each previously constructed building. Now, no final zoning certificates were issued, which is not dispute. My client had no reason to think there was a problem when additional permits were being issued. If someone had raised an issue with the first building and the second building, certainly he wouldn't have kept the building. But when you apply for additional permits, and those continue to be granted, and you have that initial inspection, that inspector is going out to the property, and he's seeing what's going on at the property. Didn't all those permits disclaim authorization of any non-conforming use? Yes, they do, Your Honor. And to address that, within the record, I submitted what the job duties are of the zoning administrator in the village of Swansea. There's an ordinance which lists out his duties. And those duties are to assist the public in understanding the zoning code, make interpretations, and things like that. So when the village says that my client maybe should have done more in understanding the zoning code, he spoke with the village officials, and he got an interpretation which he obviously liked. I think to further investigate that or get an attorney to disagree with that would be like objecting in court when things are going your way. That just doesn't make sense. I understand that it did ultimately say that on those permits. But when you look at everything as a whole, and you see what the job duties are of the zoning administrator, I think it's very reasonable to rely upon that. As a reminder, this all occurred over 16 years across two properties for a total of seven buildings. Until the corrective action letter in June of 2023, my client was never told to shut down and was given information by the village on how to keep operating, such as creating a landscaping buffer, and how to satisfy zoning and building requirements for the residences in 1958. He was later told to cease the residential use, and he complied immediately. The village administrator later sent him a letter providing suggestions for modifications to the storage business to appease his neighbors. The village also acted affirmatively in providing incorrect information to the appraiser for my client's bank loans. The second element is the affirmative act induced substantial reliance. He relied on all the acts of the village to invest over a million dollars. In fact, he relied on the acts multiple times as each building was built under a separate permit. He relied upon the correspondence he had with the village in writing and in person. Now, without relying on the specifics of any conversation, it's not in dispute that for the 16 years my client operated, he was never told to shut down. However, when he was in June of 2023, he shut down immediately. The third element is the agreed party substantially changed its position as a result of this justifiable reliance. This element is very clearly met. He invested over a million dollars over 16 years, building seven buildings, and taking a loan to purchase 2012 Llewellyn. Now, the village leans heavily on the argument that estoppels disfavor against municipalities, but with our cited cases and undisputed facts, estoppels should be applied in this case. I highlight DuPage County versus K-5. In that case, K-5 invested $600,000 and operated for six years. My clients invested well more than that and operated for 16 years. FLM Enterprises versus Peoria County Zoning Board of Appeals. A previously issued nonconforming use certificate was issued, and then FLM purchased the property. This is similar to my client's appraisal information, which led to loan approval and the reaffirmation he was allowed to conduct self-storage. MNAP versus Cook County. In this case, the appellate court found affirmative acts by the county, along with persuasive evidence that plaintiff would not have purchased the property if he had known the county would not allow his attendant use of stables. In that case, it was determined that there was a viable estoppel claim. Moving on to latches, the village takes the position that this argument has been waived, but clearly it was submitted in writing in our initial zoning application to the village, and I think that since it's in writing, the facts support it, but certainly this court can continue to consider that. We've shown the two fundamental elements of latches. One, lack of due diligence by the party asserting the claim, and two, prejudice to the opposing party. Compare this to the DuPage County versus K-5 case. The court there applied latches when there was a six-year delay and only $600,000 spent by K-5. We were at a much stronger pace with the passage of 16 years and over $1 million invested. The village issued permits for every building and conducted at least an initial inspection. They didn't see what was going on with the previously constructed buildings. That is a lack of due diligence that led to my client being prejudiced. In our cross-appeal, we challenged the circuit court's finding on 2012 law, and the standard review here should be the same. Since there are no factual findings in the administrative decision, it should be de novo. The circuit court made a distinction due to the appraiser only having done a zoning check on 1958 and not 2012. That was fair by the circuit court. If the village had simply told the appraiser that self-storage was not allowed, then the loan for 2012 never would have been approved. Or at the very least, it would have raised red flags that both the bank and my client would have addressed. My client would not have continued expanding self-storage if the appraiser had been accurately informed by the village. Latches also applies here as the village slept on its right for 16 years. If this hadn't happened, then my client would never have purchased 2012 and expanded. So, in closing, I would just ask that you infirm the circuit court's decision on 1958 and reverse the circuit court's decision on 2012. Do we actually, our role as the appellate court, are we actually considering the zoning board or the ruling on the circuit court? Well, I mean, in effect we are, but our review is of the zoning board decision. I think as you review the record, yes, you are reviewing what the zoning board's decision is. But as we highlight in our brief, I think under the rules of civil procedure, it is the circuit court's decision which is under appeal. But in an administrative appeal, yes, Your Honor. I mean, the law is that you're reviewing the administrative body. Thank you. Thank you. Thank you. Mr. Cranston. Thank you, Your Honor. Let me please the court again. Firstly, with respect to replying to the, on the appeal issues, the plaintiffs can't rely on building permits to establish zoning compliance, particularly where they agreed in the permits that the zoning was their responsibility. There isn't any requirement for factual findings in the ordinances there. They were not. As to your question, Your Honor, our position is that the record simply doesn't support it. I think one can rule based upon that. The other business is the 16 years of operation. I would look closely at Mr. Deppie's direct testimony. There's very few questions at all asked. I would contend they skirted away from those particular issues and the suggestions that there were constant inspections and drive-bys is not supported in the record. The inspections that were done were for building code violations to see that they complied with permits, and I think that's all the record supports. Let me ask you this. Yes. The opposing counsel said the standard review in this case is de novo. Do you agree with that? No. I think it's clearly erroneous, which I addressed at the outset, because I think the facts are disputed. They said that they're undisputed facts. I don't think undisputed, as I read the cases, provides for de novo anyway. I think there has to be a pure legal issue to get to de novo. The law review de novo, but if there's a mixture of law and facts, the fact part is clearly erroneous. Yes. If there's a mixture of law and facts, it's clearly erroneous as well, and I think that's what we have here. That's what we contended the trial court did agree with that particular thing, but I think we've got contested facts, and the thing with Mr. Harp I pointed out I think is a glaring example of that. Thank you very much. Finally, with respect to the cross appeal, I would draw the Court's attention to what you took with the case, which was the motion to supplement the record. I think that we'd ask the Court to grant us leave for our reply, but I think the key to this determination is to ensure that the record on appeal accurately discloses what occurred at the trial level. The judge asked for proposed orders. We gave her proposed orders, and they inadvertently didn't get in the court file. I think what happened, they were sent to the judge, and she didn't put them in the file. We discovered it. We put it before the Court. So there's a case we cited from this Court. Marion Metal and Roofing v. Wood, I think, provides for it. I think those kinds of issues are liberally construed. It was no one's fault, so I think that's important, because the proposed orders show that the plaintiffs throughout the case took the position that the entire parcel, the two parcels, 1958 and 2012 Llewellyn, were part of the same business and they should be treated together. And then surprisingly, in their proposed orders, they suggested that they should be separated, which we didn't even have an opportunity to reply. So I think under what is known as the invited heir doctrine, you, frankly, briefly, you can't have your cake and eat it, too. If you take a position in a particular case and it's not ruled in your favor, you can't then appeal that position. So I think there's a waiver there, if you will. I talked about dismissal, but that is all. I think as far as the other merits, they've been addressed in the brief and in the first argument. Thank you. Questions? No, thank you. All right, thank you. Thank you, Your Honor. Thank you, Your Honor. Just to briefly address the standard overview again, in reviewing the transcript of the Zoning Board hearing, you will see that at the conclusion of evidence and arguments, the Board went to executive session. I'm, of course, not in there Mr. Krotsky is. Presumably, they were talking about what the disputes were and what they felt about the different evidence. And they came out and they made a very brief motion, which didn't discuss any facts. And then the next day, we're given a proposed order, which the bill is prepared, that also didn't discuss any disputed facts. So based upon all that, I don't see how we can have a factual dispute, because they should have highlighted in the order if there were any. So for those reasons, I believe that the standard review is de novo. The verage referenced the direct examination of my client and that we were skirting some issues. I was not skirting any issues. The attempt was to not waste the Board's time. As you know, the record is lengthy. I believe there were several hundred pages submitted to this lay board ahead of the hearing. And I operate on the presumption that they had reviewed this ahead of time. So I didn't go through in detail each exhibit, each permit, because I assumed that they had reviewed it, highlighting when the different permits were, what each permit said. And there was lengthy evidence submitted ahead of time. So I was really just trying to not waste the Board's time on that. If I have nothing further, I believe I've addressed everything else in my brief and orally, unless you have questions for me. May I clarify a small point? But we went through it very quickly, and I didn't quite understand it from your briefs. How do we calculate the 16 years? We're talking about the issue is self-storage rental usage. I didn't come up with 16 years. Do you recall how you would reach that assertion of 16 years of that usage? Just from memory, I know that he was shut down in 2023. I do believe he purchased it around 2006, 2007. I apologize. I just don't have that date right in front of me. It might have been 15. But I think at the very least, there wasn't a contention that he was operating self-storage, at least until 2010. So I know there's 13 years there. But I do know that there was some self-storage going on before that, which is part of the record. But I just apologize. I don't have that specifically. All right. Thank you. All right. Thank you. Thank you. We appreciate your audience. We will take the matter under advisement and issue a decision in due course. Thank you.